**Eugene WELCH, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 35898.

Court of Criminal Appeals of Texas.

Nov. 13, 1963.

Rehearing Denied Jan. 8, 1964.

498

Robert Doss, Denison, Charles E. Hughes, Joe Wolfe (On Appeal Only), Sherman, for appellant.

R. C. Slagle, Jr., Sp. Pros., Sherman, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Presiding Judge.

The offense is murder; the punishment, death.

The undisputed evidence, including the confession of the appellant and the testimony of the three eye witnesses, shows that the appellant, a Negro, came to the home of J. R. Ballou some 10½ miles from Sherman and 3½ miles from Dorchester, in Grayson County, shortly after 10 o'clock on the night of June 10, 1962; that he was armed with a pistol and after tying the hands and feet of J. R. Ballou and his two sons and the hands of Mrs. Ballou, demanded and took money; threatened to kill all of them; made as if to set fire to the house and finally picked up a .22 caliber rifle that was in the house, loaded it, aimed it first at Mr. Ballou and then at his son Robert Wayne Ballou, the deceased, and fired, the bullet entering the eye and causing the death of Robert Wayne Ballou.

The undisputed evidence further reveals that after the shot was fired Mr. Ballou broke his bonds and lunged at the appellant and was severely injured by being hit over the head with the rifle.

The appellant left after losing possession of the pistol and rifle in the fight in which the mother, father and brother of the deceased engaged the appellant despite their being tied. Some money was taken from the Ballous, but the appellant declined to take a check tendered to him if he would leave them unharmed.

The appellant was apprehended the following morning and confessed to the robbery and the shooting.

Indictment was returned and counsel who so ably represented the appellant in his trial and on this appeal were appointed by the court to defend him.

On the last day of December, 1962, the indictment under which he was tried and convicted was returned; the prior indictment was dismissed, and the same attorneys were again appointed to defend. Trial was had beginning January 14, 1963.

The sole defense offered was that of insanity. No preliminary trial was sought on the issue but it was the theory and contention of the defense that the appellant was insane at the time of the trial as well as at the time of the killing.

The issue of appellant's sanity was closely contested. Dr. David Wells, the only practicing psychiatrist in Grayson County, testified that he examined the appellant and conducted tests as to his mental condition, one being the Wide Range Achievement test designed to test mental capacity as opposed to mental illness, and the other the Rorschach test which tests both mental capacity and the presence of possible mental illness.

Dr. Wells testified that the Wide Range Achievement test showed that the appellant had the mental capacity of approximately a 12 year old and the Rorschach test supported this, but also was "possibly suggestive of a mental illness separate from the loss of mental capacity" and that because of his defective mental capacity it was much harder to "ascertain completely" whether Schizophrenia was present; that the test was suggestive of Schizophrenia but not

conclusive. Based upon his tests and examination of the appellant, and the hypothetical questions stating the facts shown by the evidence, Dr. Wells expressed the opinion that the appellant was so dethroned of reason that he did not know the nature or quality of his actions and did not know the difference between right and wrong, both at the time of the killing and the time he was testifying.

The state countered with the testimony of Dr. John Hardy, physician and surgeon who had practiced his profession for 34 years as surgeon and general practitioner. He testified regarding his observation of the appellant on June 16, 1962, and on several occasions thereafter, one of which was on December 9, 1962, and lasted for an hour and a half. Dr. Hardy expressed the opinion that the appellant knew right from wrong; was not dethroned of his reason, and that he was sane at the time he observed him including the time he was testifying.

Also the state called a number of lay witnesses who testified to having observed the appellant; expressed the opinion that he was sane on such occasions and knew right from wrong and that there was nothing in his speech, behavior, appearance, acts or conduct that would cause one to believe that the appellant was insane or of unsound mind.

One of these witnesses was Eugene Payne, a farmer for whom the appellant worked for 5 weeks during May and June, 1962. He testified that appellant drove a tractor, chopped cotton, did garden and yard work under his directions; did an excellent job; that he worked with the appellant "many a day" and had his last conversation with him after sundown on June 9, 1962.

Other witnesses who testified to the sanity of the appellant were William Sample, a farmer, who had been seeing him for about a month previously and was with him on June 10, 1962, for some 4 hours; Otis McKenzie, a salesman, and John Crawford, reporter for the Sherman Democrat, who

witnessed his confession; Texas Rangers Lewis Rigler and G. W. Burks; G. W. Blanton, Sheriff of Grayson County and his secretary, Marie Robnett.

The issues of insanity were resolved against the appellant and the evidence is sufficient to sustain their findings that he was sane at the time the offense was alleged to have been committed and at the time of trial. McGee v. State, 155 Tex.Cr.R. 639, 238 S.W.2d 707.

Complaint is made to the overruling of appellant's motion for mistrial made at the conclusion of the testimony of J. R. Ballou, father of the deceased, because during his testimony relating to the tying together of the big toes of the deceased by the appellant he testified that Mrs. Ballou commented "You're pretty good with tying knots. Where did you learn it?" and the appellant answered "I learned it in prison. We studied things like this out while I was down there."

No objection was made to this testimony of Mr. Ballou at the time it was given. Counsel did, however, then state: "We have a motion, your Honor, at the first opportunity."

It is appellant's contention that the testimony of Mr. Ballou showing the appellant's reply to the question asked by his wife was not admissible under the res gestae rule because it was not relevant or material to any issue in the case; that the testimony was so prejudicial that no instruction to the jury could cure the harm, and that no instruction to disregard it was given.

Christesson v. State, 172 Tex.Cr.R. 27, 353 S.W.2d 218, is authority for the state's position that the evidence was admissible as a res gestae statement.

We need not rest our holding upon this authority alone, however, for it further appears that the complained of testimony of Mr. Ballou was not in response to the question propounded by the state; was not ex-

pected by the state, and no objection or motion to exclude such testimony was made and no motion for mistrial was made until after the examination and cross-examination of the witness was completed.

We cannot agree that the complaint to this testimony was timely made or that it is well taken.

Appellant presents by his informal bill of exception No. 2 the contention that Art. 580 C.C.P. was violated in that the defendant was not personally present on January 8, 1963, when certain motions were presented in open court for consideration of the trial judge and testimony of Sheriff Blanton was heard on such motions and the court ruled thereon.

As has been stated, the trial began on January 14, 1963. However, on January 8 appellant filed and presented to the court motions seeking to have the court instruct the county attorney (1) to permit inspection by his counsel of his purported confession and (2) to permit inspection and photostating of a letter purportedly written by appellant to the sheriff.

The statement of facts relating to the proceedings had on January 8 shows that motions were made also that defense counsel be furnished (1) a list of trial witnesses, (2) list of witnesses before the grand juries, (3) a motion to supply statements of trial witnesses. No written motions covering these matters appear to have been filed, the matters requested having been supplied and the motions granted.

The statement of facts relating to the hearing on January 8, 1963, also refers to a motion to set aside the indictment, which the court overruled. We find no such motion or exception in writing in the record.

The record of the proceedings on January 8 does not reveal that the appellant was present or was not present. That he was not present was first complained of in the testimony of his counsel after the state had rested and appellant had moved for

an instructed verdict and re-urged his motion for mistrial. The question is not before us by bill of exception. See Beard v. State, 164 Tex.Cr.R. 502, 305 S.W.2d 291; Petty v. State, 171 Tex.Cr.R. 617, 352 S.W.2d 285.

 The testimony heard by the trial judge on January 8 was that offered by the appellant for the purpose of his bills of exception to the court's action in overruling his motions. We are cited no authority to support the appellant's contention that reversal should be ordered because the bills were perfected in the absence of the appellant.

Had the absence of the appellant at the hearing been timely complained of, the evidence heard in his absence might have been reheard in his presence. See Garcia v. State, 5 Tex.App. 337.

Appellant complains of the overruling of his motion to require the production of a letter written by him to the sheriff. The evidence shows that no such letter was in the possession of the sheriff or of state's counsel.

He complains of the refusal of the court to require that his confession be produced, though our prior holdings support the court's ruling. Dowling v. State, 167 Tex. Cr.R. 43, 317 S.W.2d 533; Lopez v. State, 158 Tex.Cr.R. 16, 252 S.W.2d 701; Freeman v. State, 166 Tex.Cr.R. 626, 317 S.W.2d 726.

The contention is urged that a contrary rule should apply because the confession may have proved helpful to the psychiatrist who examined the appellant.

Dr. Wells appeared to have all of the information which he would have obtained by reading the confession. He testified that he relied upon information he received from the appellant (such as "he admitted to having heard voices"). Hypothetical questions were propounded to him covering all phases of the evidence. There is no showing that the doctor desired to see the confession and his testimony clearly shows that he did not

need it to form his opinion that the appellant was insane.

The remaining complaint relates to the excusing, by the clerk, of a member of the special venire who had a legal exemption but failed to swear to her written claim of exemption.

There is no formal bill of exception and no showing that the jury was not completed before the excused juror was reached.

Had counsel desired to question her being excused he should have sought process to require her to re-appear.

The complaint as to the excusing of the juror in the absence of the judge and of the defendant is not before us. Waggoner v. State, 161 Tex.Cr.R. 242, 275 S.W. 2d 821. If so, reversible error is not shown.

The judgment is affirmed.