**Eugene WELCH, Appellant,**

**v.**

**Dr. George J. BETO, Director, Texas Department of Corrections, Appellee.**

**No. 22185.**

United States Court of Appeals
Fifth Circuit.

Feb. 3, 1966.

Rehearing Denied March 28, 1966.

Robert Doss, Denison, Tex., Charles E. Hughes, Sherman, Tex., Charles Alan Wright, Austin, Tex., for appellant.

Lonny F. Zwiener, Asst. Atty. Gen., Austin, Tex., Waggoner Carr, Atty. Gen. of Texas, Hawthorne Phillips, First Asst. Atty. Gen., Stanton Stone, Executive Asst. Atty. Gen., Howard M. Fender, Asst. Atty. Gen., Austin, Tex., for appellee.

Before BROWN and COLEMAN, Circuit Judges, and MORGAN, District Judge.

MORGAN, District Judge:

This case has a lengthy history. In order to unravel the issues presented, the case history in both the state and the federal courts must be related in detail.

Appellant Eugene Welch was tried in the District Court of Grayson County, Texas, convicted and sentenced to death for the brutal killing of Robert Wayne Ballou. Welch, a Negro adult, committed the murder of Ballou, a white minor, at Ballou's family home on June 10, 1962, while robbing the Ballou family. Welch was indicted for murder on June 18, 1962. On August 11, 1962, two attorneys from Grayson County, Texas, Robert L. Doss and Charles E. Hughes, were appointed by the State Court to represent Welch. On December 31, 1962, the indictment of June 18, 1962, was dismissed, but on the same day Welch was reindicted for the same crime and Attorneys Doss and Hughes were again appointed to represent Welch. A motion for continuance was made on January 8, 1963, but was denied, and the case was set for trial on January 14, 1963. The motion for continuance was renewed on January 14, 1963, but was denied.

At the trial, which began on January 14, 1963, appellant's sole defense was insanity. This defense was supported by the testimony of Dr. David T. Wells, the only psychiatrist in Grayson County, Texas, who testified without fee. This psychiatrist's testimony was that the appellant had the mental capacity of a twelve-year old, and that he did not know the nature of his acts or the difference between right and wrong at the time of the commission of the crime or at the time of the trial. The state offered evidence from laymen that the appellant was sane, and also from Dr. John Hardy, Grayson County physician, who testified appellant was, in his opinion, sane. On January 24, 1963, the jury resolved the issue of insanity against the appellant, found him guilty, and fixed his sentence at death. On November 13, 1963, the conviction was affirmed,[1] and a motion for rehearing was denied on January 8, 1964. Thereafter, on January 21, 1964, counsel for Welch filed an application with the trial court under Vernon's Ann.Texas Criminal Procedure, Article 932b, Section 3,[2] for a hear-

1. Welsh v. State, 373 S.W.2d 497 (Tex. Cr.App.1963).

2. Texas Code of Criminal Procedure, article 932b: * * * Sec. 3. Insanity as Bar to Proceedings. If the question of the sanity of the defendant is raised after his conviction and prior to the pronouncement of sentence in a felony case or while an appeal from that conviction is pending, and sufficient proof is shown to satisfy the judge of the convicting court that a reasonable doubt exists as to the sanity of the defendant, the judge shall empanel a jury to determine whether the defendant is sane

ing as to post-conviction insanity. The application under this provision was supported by an affidavit of the psychiatrist, Dr. Wells, in which affidavit Dr. Wells deposed that he had examined appellant Welch on January 21, 1964, and stated:

"In my opinion Eugene Welch is mentally ill at the present time, cannot understand the nature and consequences of the act he committed, cannot fully understand the nature of the proceedings which have been had and which are continuing against him, and cannot differentiate right from wrong in the legal sense at the present time. I believe him to be insane at the present time."

At the hearing the state presented no evidence, either orally or by affidavit, to refute Dr. Wells' affidavit, but contended that the affidavit filed on the date of the hearing, January 21, 1964, was identical with the testimony offered by the same psychiatric witness when the case was tried the previous year. The record reveals that the defendant was present at the hearing under Section 3, 932b of Vernon's Annotated Texas Code.

On February 29, 1964, counsel for petitioner filed with the trial judge a motion requesting a post-sentence hearing under Article 932b, Section 4,[3] Texas Code of Criminal Procedure, which incorporated the same affidavit of Dr. Wells which had been filed with the motion under Section 3. The Texas trial court

considered this affidavit and denied this petition while Welch was incarcerated at the State Prison at Huntsville, Texas. No evidence was presented on behalf of the state, either orally or by affidavit, to refute Dr. Wells' affidavit of January 21, 1964.

On February 29, 1964, application for a writ of habeas corpus was filed with the state trial court in which Welch asserted that his constitutional rights had been violated because of the denial of his motions under Sections 3 and 4 of Article 932b, and because mob hysteria at the time of the trial prevented him from receiving equal treatment and due process of law. This application for a writ of habeas corpus was denied by the trial judge, and the same writ was denied on March 4, 1964, by the Texas Court of Criminal Appeals.

Thereafter, petitioner Welch filed a writ of habeas corpus in the federal district court for the Southern District of Texas; a full and complete evidentiary hearing was held in March, 1964, and petitioner's application for a writ of habeas corpus was denied. This appeal is from the denial of the writ of habeas corpus by the federal district court.

The first question presented by the appellant is whether there was denial of due process, within the meaning of the Fourteenth Amendment to the Constitution of the United States, for the state court to refuse a sanity hearing to one subject to the death penalty when the

---

or insane. If the jury finds the defendant is insane, the court shall enter an order committing the defendant to a State mental hospital and placing him in the custody of the sheriff for transportation to a State mental hospital to be confined therein as a person charged with a criminal offense until he becomes sane. If the jury finds the defendant is sane, the proceedings in the case against him shall continue.

3. Texas Code of Criminal Procedure, article 932b: * * * Sec. 4. Insanity as Bar to Execution of Death Sentence. If the question of the sanity of a person

under death sentence is raised and sufficient proof is shown to satisfy the judge of the convicting court or the judge of the district court of the county in which the person is confined that reasonable doubt exists as to his sanity, the judge shall empanel a jury to determine whether the person is sane or insane. If the jury finds the person is insane, the court shall enter an order committing him to a State mental hospital to be confined therein as a person charged with a criminal offense until he becomes sane. If the jury finds the person is sane, the court shall remand him to the proper authority for disposition according to law.

application for such hearing was supported by the expert evidence of the psychiatrist Dr. Wells deposing that the prisoner was insane.

The first thrust of the argument under this "due process" question is that due process bars the execution of an insane person. Although this is an open question which the Supreme Court of the United States has not decided in terms, individual justices have expressed themselves to this effect,[4] but this Court does not deem it necessary to pass upon the question of whether or not it is a denial of due process to execute an insane person since the law of Texas, Article 932b, supra, prohibits the execution of an insane person.

■ The second thrust under this "due process" question is whether the appellant was accorded due process under the Texas statutes. As stated above, the Texas law creates in petitioner a substantive right not to be executed while insane, even if such right is not contained in the due process clause of the Fourteenth Amendment. Appellant "is entitled to have procedural due process observed in the protection of these substantive rights even though substantive due process would not compel the rights to be given". United States ex rel. Smith v. Baldi, 192 F.2d 540, 544 (3 Cir. 1951), aff'd 344 U.S. 561, 73 S.Ct. 391, 97 L. Ed. 549 (1953). Texas law looks to a jury to try this question of sanity where there is reasonable doubt as to such sanity. It is left to the judge of the convicting court to determine whether such reasonable doubt exists, and, although the trial judge is vested with considerable discretion in the matter, he is not given arbitrary power. If he acts in a fashion unsupported by the evidence, he has ceased to act judicially, and has denied the prisoner before him procedural due process.

■■ Here, at the purported hearing, the applicant Welch presented evidence from a psychiatrist that the prisoner was insane at the time of the hearing. This evidence is uncontroverted. While the state seeks to make much of the fact that this psychiatrist's conclusions had been disregarded by a jury on the trial held twelve months before, and that the trial judge had also heard the evidence at the criminal trial in January, 1963, this is hardly helpful in forming a judgment as to whether there is reasonable doubt as to the sanity of Welch at a later time—actually a full year later, on January 21, 1964. Neither would the presence of Welch at the short Section 3 hearing enable the state trial judge to overcome the unrefuted affidavit of Dr. Wells.[5] Welch was not required to prove actual insanity. His burden was to present facts sufficient to create in the Court's mind reasonable ground to doubt his sanity. This burden was met handily by the affidavit of Dr. Wells on January 21, 1964, in which he deposed he believed Welch to be insane on that date and should be sent to a State hospital. On the strength of the prima-facie showing one of two things was required: (1) the State was required to produce receivable evidence to the contrary sufficient in quality to lead the trial Judge to conclude that there was not "* * * sufficient proof * * * shown to satisfy the judge *. * * that a reasonable doubt exists as to the sanity of the defendant" (see notes 2, 3, supra); (2) failing the production of such controverting evidence and a negative finding thereon, the state trial court was required to empanel a jury to determine Welch's sanity. The

4. See: Dissenting Opinion of Justice Frankfurter in Solesbee v. Balkcom, 339 U.S. 9, 70 S.Ct. 457, 94 L.Ed. 604; and Caritativo v. People of State of California, 357 U.S. 549, 78 S.Ct. 1263, 2 L.Ed.2d 1531. See also Justice Harlan concurring in Caritativo v. People of State of California, supra.

5. Dr. Wells is an M.D. specializing in psychiatry. He is a diplomate of the American Board of Pyschiatry and Neurology and holds a B.S. and M.D. degrees from Baylor University. He was employed in his profession by the State Board of Hospitals and Special Schools for the State of Texas for five years.

failure here to do either constituted a denial of due process. The finding of the state court having no evidence to support such finding is void as to denial of due process. Thompson v. City of Louisville et al., 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654.

The second question presented is whether the totality of circumstances surrounding the trial of this prisoner, a Negro, who had brutally killed a young white person, combine to make the trial so unfair as to amount to a denial of due process within the meaning of the Fourteenth Amendment.

■■ The District Court listed eight particulars [6] advanced by the prisoner which made up these circumstances which prevented a fair trial and the denial of his due process. The prisoner, however, had the burden of proving that he received an unfair trial, and of proving it * * * "not as a matter of speculation but as a demonstrable reality". Adams v. United States ex rel. McCann, 317 U.S. 269, 281, 63 S.Ct. 236, 242, 87 L.Ed. 268. This Court is in accord with the rulings of the District Court that the contentions of the petitioner as to mob hysteria dominating the trial are wholly without factual support and that the reasoning in the opinion on this question should be dispositive of the issue here.[7]

■ From a careful review of the record on the fact of post-conviction hearings held by the state trial judge, it is clear that the trial judge deviated from the correct standard of law in denying Welch a sanity hearing before a state jury. Having invoked the Texas statutes granting post-conviction hearings, Welch had the right to be tried according to the substantive and procedural due process requirements of the Fourteenth Amendment. This right was not accorded him. The District Court might conceivably hold a hearing de novo on the issue of sanity. But such a hearing would neither adequately protect the federal rights of this state criminal defendant nor take account of the leeway which must be left to the states in the administration of their own criminal justice. Welch should have the opportunity to have the issue of his sanity determined under the laws of Texas under the appropriate state procedures. Where he has not had that opportunity, he should not be required to establish his insanity in a federal district court. See Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760.

The judgment of the District Court is reversed, and the case is remanded to the District Court to be held by such District Court in order to give the state opportunity to accord Welch a post-conviction hearing under Section 4, Article 932b, Texas Code of Criminal Procedure, in the light of this opinion, within a reasonable time. In default thereof, the petitioner shall not be executed.

Reversed.

---

6. (1) The presence of many spectators in the courtroom and adjacent public areas;
   (2) The past history of violence in the area, namely the lynching in 1929 or 1930 of a negro who allegedly raped a white woman;
   (3) The presence of an unnecessarily large number of armed law enforcement officers in the courtroom and courthouse;
   (4) The continual printing of and reference to portions of petitioner's confession, which had been witnessed by two reporters, in both newspapers serving the area, along with continual reference to the racial facts of the case;
   (5) The destruction of a letter vital to the defense from a tactical standpoint;
   (6) The denial to the defense of access to the confession before trial;
   (7) The unseemly haste in bringing the case to trial; and
   (8) The atmosphere of the trial, which was such that the trial officials and jury were in fear for their lives if a verdict other than death were returned.

7. 234 F.Supp. 492.