IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-60121
_____


WILLIE ALBERT SMITH,

                          Petitioner-Appellee
                          Cross-Appellant,

     v.

EDDIE LUCAS, Commissioner, Mississippi
  Department of Corrections, Et AL.,

                          Respondents-Appellants
                          Cross-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Mississippi
_____

March 8, 1994

Before POLITZ, Chief Judge, KING and SMITH, Circuit Judges.

PER CURIAM:

     Before us are an appeal and cross-appeal from the district

court's order of February 3, 1994, which prohibits the State of

Mississippi "from seeking to resentence the Petitioner Willie

Albert Smith to the death penalty."  Memorandum Opinion and Order

entered February 3, 1994 (the "February 3 Order").  The State

challenges the order as exceeding our mandate in Smith v. Black,

970 F.2d 1383 (5th Cir. 1992) ("Smith III") -- as interpreted in

Smith v. Lucas, 9 F.3d 359 (5th Cir. 1993) ("Smith IV") -- and

the district court's authority under federal law.  Smith

complains that the order does not go far enough; he argues that

the district court instead should have ordered his permanent release from custody.  We agree with the State that the district court again exceeded our mandate and therefore vacate the February 3 Order.

## I.  Background

A brief recitation of the procedural posture of this case is necessary.[1]  Smith first mounted the habeas challenge to his sentence in August of 1983, arguing, inter alia, that Mississippi's use of the "especially heinous" aggravating factor in the jury's deliberation as to his death sentence was unconstitutional.  The district court denied him relief in 1988, and we affirmed the court's judgment in 1990, on the basis that the relief requested would necessitate the creation of a new rule of constitutional law under Teague v. Lane, 489 U.S. 288 (1989).  See Smith v. Black, 904 F.2d 950 (5th Cir. 1990) ("Smith I") (declining to apply the "new rule" created by Maynard v. Cartwright, 486 U.S. 356 (1988), and Clemons v. Mississippi, 494 U.S. 738, 752 (1990)).

The Supreme Court vacated our judgment in Smith I and remanded the case to us "for further consideration in light of Stringer v. Black, 112 S. Ct. 1130 (1992)."  Smith v. Black, 112 S. Ct. 1463 (1992) ("Smith II").  In Stringer, the Supreme Court had held that the precedents prior to Maynard and Clemons "yield[ed] a well-settled principle," and thus the decisions in

---

[1] For a more thorough discussion of the procedural and factual history of this case, see Smith v. Black, 904 F.2d 950 (5th Cir. 1990).

tandem did not constitute a "new rule" for purposes of Teague.

Stringer, 112 S. Ct. at 1140.

On remand, this court applied the Maynard and Clemons rules in the case presented and held that "the use of the `especially heinous' aggravating circumstance without a limiting instruction clearly was error."  Smith III, 970 F.2d at 1388.  Our mandate to the district court was as follows:

> The case is REMANDED to the district court with instructions to issue the writ of habeas corpus unless the State of Mississippi initiates appropriate proceedings[2] in state court within a reasonable time after the issuance of our mandate.

Id.

The district court at first complied with our order and issued a conditional writ on November 23, 1992, giving the State six months in which to correct the sentencing defect.  When the State failed to initiate action to correct the sentencing defect, however, the district court went beyond our mandate and, on July 9, 1993, issued an order (the "July 9 Order") and accompanying

---

[2] In the text of the opinion, which was incorporated by reference into our mandate, we advised that the death sentence in Smith's case could

> be salvaged if the state appellate court eliminated the invalid aggravating factor and reweighed the remaining valid factors against the mitigating factors, or if it determined that the use of the invalid factor was harmless beyond a reasonable doubt. . . .  Should the State elect to initiate further proceedings in the Mississippi Supreme Court, that court still has the option of reweighing or performing a harmless error analysis as those procedures have been defined in [the relevant cases].

Smith III, 970 F.2d 1383, 1388 (5th Cir. 1992).

writ, directing "that the State of Mississippi impose upon [Smith] a sentence of life imprisonment."  On appeal to this court, we affirmed the district court's July 9 Order and writ vacating Smith's unconstitutional sentence, but specifically excised that portion of the July 9 Order and writ that exceeded our directive in Smith III.  See Smith IV, 9 F.3d at 368.[3]

On remand from Smith IV the district court entered an order in compliance with our mandate in Smith III, as interpreted by Smith IV, and issued a writ on January 5, 1994, "directing [Smith's] sentence of death to be vacated."  Subsequently, however, the court below was asked by Smith to "interpret" and "enforce" that order.  Specifically, Smith sought "clarification" that the January 5 writ "precludes any attempt to resentence [Smith] to death."  The district court apparently recognized

---

[3] In Smith IV, we noted that "[t]he directive from this court allowed but one consequence if the State failed to comply with the November 23 Order -- to issue the writ for Smith's immediate and unconditional release from his unconstitutional sentence."  9 F.3d at 367.  On December 20, 1993, apparently at the behest of the State, the Circuit Court of Hinds County issued an order reading, in relevant part, as follows:

> The Court having been informed that the sentence of death in the above styled and numbered cause has been vacated by order of the United States District [sic] for the Southern Distinct [sic] of Mississippi, entered July 8, [sic] 1993, and that the vacation of said death sentence has been affirmed . . . hereby releases Willie Albert Smith from custody pursuant to his constitutionally invalid sentence of death. . . . However, since neither the state nor federal courts have found any infirmity in Smith's conviction of capital murder, . . . the State of Mississippi shall retain him in custody pursuant to the valid conviction for capital murder pending his resentencing hearing.

Order dated December 20, 1993 (citations omitted).

itself to be bound by our mandate; nonetheless, it concluded that the relief Smith requested had not been addressed by this court in Smith IV.  See, e.g., Engel v. Teleprompter Corp., 732 F.2d 1238, 1241 (5th Cir. 1984) (noting that a "district court is not preempted from acting on a matter neither raised before it nor acted upon by this court").  Consequently, the court below determined that it had the authority to decide the issue.  In light of its view that "[t]here must be some consequence to the State for failure to comply with the Order of this Court," and apparently believing it had the authority to do so under Burton v. Johnson, 975 F.2d 690, 693 (10th Cir. 1992), cert. denied, 113 S. Ct. 1879 (1993), the district court issued the February 3 Order, permanently prohibiting the State from any future attempt to resentence Smith to death.

## II.  Analysis

The court below found that it was permissible for it to prevent the State from seeking the death penalty on resentencing apparently because it viewed such an action as part of its "oblig[ation] to carry out the instructions [this court] ha[d] given" and because it "should then be presumed to be free to take any other consistent actions."  We disagree.  The exact issue decided by the district court in the February 3 Order was argued to this court in Smith IV in the context of Welch v. Beto, 355 F.2d 1016, 1020 (5th Cir.), cert. denied, 385 U.S. 839 (1966), and Jones v. Smith, 685 F. Supp. 604, 606 (S.D. Miss. 1988):

Smith responds . . . that a federal court may use the habeas writ to prohibit the State permanently from executing a prisoner

                            * * *

Smith understands <u>Welch</u> to allow a federal court indirectly to commute a death sentence into life imprisonment by prohibiting execution of the death sentence. Thus, he concludes, it is proper for a federal court to grant habeas relief to a state defendant sentenced to death in the form of a life sentence.

<u>Smith IV</u>, 9 F.3d at 365-67. We responded that <u>Welch</u> did not support such an interpretation of our habeas powers:

Smith misreads our opinion in <u>Welch</u>. In that case, we held only that the state's default in compliance with our mandate would result in its inability to execute upon the defective sentence. **Nothing <u>in</u> <u>our</u> <u>opinion</u> <u>in</u> <u>that</u> <u>case</u> <u>can</u> <u>be</u> <u>read</u> <u>to</u> <u>have</u> <u>precluded</u> <u>the</u> <u>state</u> <u>from</u> <u>subsequently</u> <u>seeking</u> <u>a</u> <u>constitutionally</u> <u>valid</u> <u>death</u> <u>sentence</u>**.

<u>Id.</u> at 367 (emphasis added). Essentially, in telling the district court that it could not directly commute Smith's death penalty to life imprisonment (through the medium of an order directing the state court to sentence Smith to life), we also rejected Smith's position that the district court, at least under the circumstances presented in Smith's case, could do so indirectly (through the medium of an order prohibiting the State from subsequently seeking a death sentence). The February 3 Order therefore is a <u>de</u> <u>facto</u> amendment to our mandate and thus exceeded the district court's authority. <u>See, e.g.</u>, <u>Gegenheimer v. Galan</u>, 920 F.2d 307, 309 (5th Cir. 1991) ("On remand, the district court must comply with the mandate of the court of appeals and may not revisit any issues that the appellate court

6

expressly or impliedly disposed of in its decision."); <u>Newball v. Offshore Logistics, Int'l</u>, 803 F.2d 821, 826 (5th Cir. 1986) (The appellate mandate controls on all matters within its scope.).

Even if it were not abundantly clear that we have already disposed of this issue, the district court still erred in attempting to interpret a sanction into our mandate that we did not intimate, and, as discussed above, is entirely counter to our opinion in <u>Smith IV</u>. Indeed, we have some doubt as to whether a federal court has the authority to enter such a prohibition. Assuming <u>arguendo</u> that the district court was so empowered, we note that the very case upon which it relies in concluding that it may bar the State from resentencing Smith -- <u>Burton</u> -- viewed such a prohibition as an "extraordinary" remedy which must be clearly intended in the relevant mandate. 975 F.2d at 693. While we express no opinion as to the holding in <u>Burton</u>, we observe that the Tenth Circuit remanded that case to the district court to insure that the lower court intended such an extreme result. <u>Id.</u> In the case presented, by contrast, the applicable mandate came from **<u>this</u> <u>court</u>**. Therefore, even if we suppose <u>Burton</u> to be correctly decided, it would be up to this court to determine whether a permanent resentencing bar was intended. There is simply no way that our opinion can be read to authorize the district court to prohibit the State from seeking a new, constitutional death sentence to replace the one vacated in July of 1993.

7

As for Smith's cross-appeal, the district court specifically declined to issue a ruling "at this time" on Smith's request that the State be barred from imposing any sentence and effectively ordering his release.  Accordingly, any cross-appeal is premature.

## III.  Conclusion

To summarize the status quo (and giving effect to this opinion), the July 9 Order and accompanying writ, as modified in Smith IV, remain in effect.  As so modified, the July 9 Order reads as follows:

> the said writ [of habeas corpus] shall issue forthwith from the Clerk of this Court directing [Smith's] sentence of death to be vacated.

The accompanying writ, as modified, reads as follows:

> IT IS HEREBY COMMANDED AND ORDERED that [Smith's] sentence of death is vacated.

Smith's unconstitutional death sentence has been vacated arguably since July 9, 1993, but certainly since December 28, 1993, the date on which our mandate issued in Smith IV.  It is now up to the Mississippi courts to assess a new sentence for Smith's constitutionally valid conviction.

The district court's order of February 3, 1994 is VACATED.  Smith's cross-appeal is DISMISSED.


Chief Judge Politz dissents.

8