United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 8, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

—————

No. 03-20508

—————

JAIME ELIZALDE, JR.,

Petitioner - Appellant,

versus

DOUG DRETKE, DIRECTOR TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent - Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, WIENER, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Jaime Elizalde, Jr. seeks a Certificate of Appealability ("COA") to appeal the district court's

denial of his petition for habeas corpus. Specifically he requests a COA to appeal the district court's

ruling that his claims 1) that he is actually innocent, 2) that the State withheld exculpatory evidence,

and 3) that he was denied effective assistance of counsel both at trial and during his direct appeal are

procedurally barred because they were not exhausted in state court. Elizalde also seeks a COA to

appeal the district court's denial, on the merits, of his claim that the state trial court violated the

United States Constitution when it refused to instruct the jury that if sentenced to life in prison

Elizalde would be eligible for parole in forty years. As the district court correctly determined that Elizalde's claims were procedurally barred and that the Constitution does not require his requested jury instruction, his request for a COA is DENIED.

I

Jaime Elizalde, Jr., ("Elizalde") was convicted of the capital murders of Marcos Vasquez and Juan Guajado. Vasquez and Guajado were shot and killed outside the El Lugar bar. At trial, Juan Millan, the manager of the bar, testified that while standing outside his establishment he saw Elizalde, accompanied by his father Jaime Elizalde, Sr., shoot Guajado and then a fleeing Vasquez. Robert Garcia testified that from the bar he saw Guajado as he was shot. He further testified that, although he did not see the killer shoot Guajado, when he exited the bar he saw Elizalde flee with a gun.

Several days after the shooting, Millan gave a statement to the police wherein he stated that he was playing pool inside the bar with Fidel Razo at the time of the shooting and did not go outside until after he heard the gunshots. At trial, Razo testified that he was playing pool with Millan when the shots were fired. Millan disavowed the statement and testified that he was not initially truthful with the police because "he did not want to have any problems." He also admitted that the police pressured him, including threatening jail time, after he gave his initial statement.

After convicting Elizalde for capital murder, the jury determined that he posed a risk of future danger, and the trial court sentenced him to death.[1] Elizalde's direct appeal was denied and he applied for state habeas relief. Elizalde raised seven claims in his state habeas application: 1) that his right to equal protection and his right to be free from cruel and unusual punishment were violated

---

[1] At the punishment phase of the trial the state introduced evidence of Elizalde's criminal history including evidence of his membership in the Mexican Mafia. Additionally, the state presented evidence of Elizalde's involvement in prison assaults, including one in which he stabbed another prisoner with a shank.

2

when the trial court refused to instruct the jury that if sentenced to life imprisonment he would not be eligible for parole for forty years; 2) that his due process rights were violated because there was insufficient evidence to support the jury's verdict; 3) that his due process rights were violated when the trial court instructed the jury that it could consider the applicant's flight from the scene as evidence of guilty knowledge; 4) that his due process rights were violated because there was insufficient evidence to support the jury's affirmative finding as to the first issue of punishment; 5) that the multiple murder provision of the Texas Capital Murder Statute violates the cruel and unusual punishment provisions of bot h the United States and Texas constitutions; 6) that his right to due process and his right to be free from cruel and unusual punishment would be violated if he was executed after review under current Texas clemency procedures; and, 7) that his right to due process and to be free from cruel and unusual punishment would be violated by the Texas government's failure to prevent his execution. In a written opinion, the Texas Court of Criminal Appeals denied Elizalde's state habeas petition.

Elizalde then filed a federal habeas petition raising twelve claims. He amended his petition and raised only the following seven claims: 1) that his right to equal protection and his right to be free from cruel and unusual punishment were violated when the trial court refused to instruct the jury that if sentenced to life imprisonment he would not be eligible for parole for forty years; 2) that his due process rights were violated because there was insufficient evidence to support the jury's verdict; 3) that his due process rights were violated because there was insufficient evidence to support the jury's affirmative finding as to the first issue of punishment; 4) that he is illegally restrained in his liberty because he is actually innocent of the offense of which he was convicted; 5) that his due process rights were violated when the State withheld material, exculpatory evidence from the defense in

3

violation of *Brady v. Maryland* and *Napue v. Illinois*; 6) that he was denied effective assistance of counsel under *Strickland v. Washington* when his trial counsel failed to fully and properly investigate his case prior to trial; and, 7) that his due process rights were violated when the trial court instructed the jury that it could consider the applicant's flight from the scene as evidence of guilty knowledge.

The district court granted the State's summary judgment motion and denied Elizalde's habeas petition. It found that his fourth, fifth and sixth claims were procedurally defaulted because he failed to exhaust them in the state court. *See* 28 U.S.C § 2254(b)(1)(A). The district court further found that Elizalde failed to demonstrate "cause and prejudice," and that he did not demonstrate that failure to consider his petition would be a "miscarriage of justice" because he failed to demonstrate that he was actually innocent of the crime for which he was convicted. *See Sawyer v. Whitley*, 505 U.S. 333, 338-39, 112 S. Ct. 2514 (1992) (noting that "cause and prejudice" and "miscarriage of justice" are exceptions to procedural bars preventing consideration of a habeas petition).

As to Elizalde's remaining claims, the district court found that the Constitution does not require that a jury be informed that if the defendant is sentenced to life imprisonment he would not be eligible for parole for forty years. *See Green v. Johnson*, 160 F.3d 1029, 1045 (5th Cir. 1998). It further found that there was sufficient evidence for the jury to both convict Elizalde of capital murder and to sentence him to death. Finally, it found that Elizalde's due process rights were not violated when the trial court instructed the jury that it could consider evidence of Elizalde's flight as evidence of guilty knowledge. *See Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984); *see also United States v. Lopez*, 979 F.2d 1024, 1030 (5th Cir. 1993). The district court refused to grant a COA.

Elizalde now applies to this Court for a COA to appeal the following issues: 1) whether the

4

district court properly applied a procedural bar to his fourth, fifth and sixth claims and whether he is entitled to habeas relief on the merits of those claims; 2) whether the district court erred in finding that the Constitution does not require the trial court to instruct the jury that if sentenced to life in prison he would not be eligible for parole for forty years.[2]

## II

Before Elizalde can appeal the district court's ruling he must first obtain a COA. *See* 28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029 (2003) (COA is a "jurisdictional prerequisite" without which "federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners."). To obtain a COA, Elizalde must make a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). To do so he must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El,* 537 U.S. at 342. To obtain a COA for the claims which the district court found procedurally barred, Elizalde must, in addition to establishing the debatability of the underlying constitutional claim, demonstrate that jurists of reason would find it debatable whether the district court was correct in its procedural rulings as to those claims. *See Slack*, 529 U.S. at 484; *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

## A

Elizalde contends that the district court incorrectly determined that his fourth, fifth and sixth

---

[2] Elizalde does not seek a COA to appeal his claims that his due process rights were violated because there was insufficient evidence to support the jury's verdicts as to guilt and punishment, or his claim that the district court improperly instructed the jury that it could consider his flight from the scene as evidence of guilt.

claims were procedurally barred. He does not assert that the claims were exhausted in state court. Rather he argues that he has established "cause and prejudice" justifying his failure to exhaust them because he was denied effective assistance of state habeas counsel.[3] Additionally, he argues that because the state procedural bar preventing him from exhausting his claims violates due process, there is no independent state law ground justifying the federal court's refusal to consider these claims.

A federal habeas application brought by a person in custody pursuant to a state court judgement shall not be granted unless the applicant has exhausted the remedies available in state court. 28 U.S.C. § 2254(b)(1); *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). A claim not raised in the petitioner's initial state habeas application that would now be procedurally barred from consideration by the state court is "procedurally barred [in federal court] for failure to exhaust." *Beazley*, 242 F.3d at 264. This procedural bar will not be applied if the petitioner can demonstrate either "cause and prejudice *or* show that the failure to consider his claims will result in a fundamental miscarriage of justice." *Id.* at 263 (quoting *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993)) (emphasis in original); *see also Sawyer*, 505 U.S. at 338-39.

Elizalde claims that he has cause for his default because his state appointed habeas counsel prejudiced him by not raising the now defaulted claims in his state habeas application. Ostensibly Elizalde argues that he was provided ineffective assistance of state habeas counsel. "There is no

---

[3] Unlike in the district court, Elizalde does not argue before this Court that failure to consider his claims will result in a fundamental miscarriage of justice. Although he does briefly argue that he is actually innocent of the crime for which he was convicted, he does so as an independent claim for habeas relief rather than as a challenge to the district court's procedural ruling. Consequently, this challenge to the district court's procedural ruling is waived. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993). Even if we were to consider this challenge to the procedural ruling it would fail. Elizalde poin ts only to the testimony of witnesses "whose credibility was clearly in question." Considering these credibility questions were squarely before the jury, and it is within the jury's discretion to make such determinations, *see United States v. Cathey*, 259 F.3d 365, 368 (5th Cir. 2001) ("It is well-settled that credibility determinations are the sole province of the jury."), Elizalde has failed to demonstrate that failure to consider his claims will result in a fundamental miscarriage of justice.

6

constitutional right to an attorney in state post-conviction proceedings . . . [c]onsequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S. Ct 2546 (1991); *Martinez v. Johnson*, 255 F.3d 229, 240-41 (5th Cir. 2001).

Elizalde first contends that *Coleman* is inapplicable when a State takes on the responsibility of providing competent state habeas counsel. Elizalde claims that *Coleman* only applies "where the State has no responsibility to ensure that the petitioner was represented by competent counsel." *See Coleman*, 501 U.S. at 754. Further, Elizalde contends that *Coleman* recognized that "[w]here a petitioner defaults a claim as a result of the denial of the right to effective assistance of counsel, the State, which is responsible for the denial as a constitutional matter, must bear the cost of any resulting default . . . ." *See id.* Relying on TEX CODE CRIM. PROC. art. 11.071 § 2(c-d) (requiring that the state habeas court "appoint competent counsel"), Elizalde argues that Texas law requires the appointment of competent state habeas counsel such that when the state appointed habeas attorney, due to his own incompetence, defaults a claim, the State, and not the petitioner, is responsible for that default.

First, neither the Supreme Court, nor this court, has ever recognized that a state created obligation to provide effective assistance of counsel would make the State rather than the petitioner responsible for a procedural default, as might be the case if a federal constitutional right existed. Second, Texas law does not provide a right to competent state habeas counsel. *See Ex parte Graves*, 70 S.W.3d 103, 113-16 (Tex. Crim. App. 2002). In *Graves*, the Texas Court of Criminal Appeals addressed the question whether there was a right to effective assistance of counsel in Texas state habeas proceedings. The court first recognized that neither a federal court "nor this Court has ever

7

held that a habeas petitioner has a federal or state constitutional right to counsel in a habeas proceeding. Absent such a constitutional right to counsel, there can be no constitutional right to effective assistance of counsel in a habeas proceeding." *Id.* at 113; *see In re Goff*, 250 F.3d 273, 275-76 (5th Cir. 2001) (finding that Texas' decision to provide habeas counsel does not constitutionally require it to provide competent or effective assistance of counsel).

The Texas Court of Criminal Appeals did recognize that TEX CODE CRIM. PROC. art. 11.071 provides a right to "competent counsel." *See Graves*, 70 S.W.3d at 114 and n. 45 ("[I]t would seem an empty gesture to appoint incompetent counsel. We agree a 'potted plant' appointed as counsel is no better than no counsel at all."). It, however, held that art. 11.071 only requires "that counsel shall be 'competent' at the time he is appointed." *Id.* Article 11.071 does not refer to "the final product of representation." *Id.* The court found that recognizing such a right would allow a petitioner to bring an unlimited number of successive habeas petitions each time arguing that state habeas counsel incompetently failed to raise the otherwise procedurally barred claims in the previous petition. *See id.* at 114-15. Finally, it found that "the Legislature has not . . . evince[d] any intention that its choice of the term 'competent counsel' as it applies to the appointment of a habeas attorney *also* applies to the final product or services rendered by that otherwise experienced and competent attorney." *Id.* at 115-16 (emphasis in original).

Therefore, although Texas does recognize a limited right to competent counsel, it does not recognize a right to effective assistance of counsel. As Elizalde complains only that his state-appointed counsel provided ineffective assistance, he is unable to establish that the state is responsible for the default of his claims.

Elizalde next contends that *Coleman* is inapplicable because it did not resolve the issue of

8

whether a prisoner is entitled to effective assistance of state habeas counsel if state collateral review is the first place a prisoner can present a challenge to his conviction. *See Coleman*, 501 U.S. at 755 (holding only that there is no "constitutional right to counsel on appeal from the state habeas trial court judgment"); *see also Daniels v. United States*, 532 U.S. 374, 387 (2001) (Saclia, J. concurring) ("We have left open the question whether such ineffective assistance can establish a constitutional violation . . . ."). Specifically he argues that because a state habeas application presents a petitioner's first opportunity to make a claim of ineffective assistance of trial or appellate counsel, there is a constitutional right to effective state habeas counsel to present that claim. *See Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997) (acknowledging that "[i]n most instances" the state habeas court will present the first opportunity to effectively raise an ineffective assistance of counsel claim). Elizalde, however, correctly concedes that we have already resolved this question. *See, e.g.*, *Martinez*, 255 F.3d at 240; *Beazley*, 242 F.3d at 256; *Jones v. Johnson*, 171 F.3d 270, 277 (5th Cir. 1999); *Callins v. Johnson*, 89 F.3d 210, 212 (5th Cir. 1996).

In *Martinez*, we recognized that *Coleman* may have reserved the issue of whether there is a right to state habeas counsel when the state habeas corpus proceeding is the first opportunity to raise a particular claim. *See Martinez*, 255 F.3d at 240. Like Elizalde, Martinez argued that "he possessed a constitutional right to effective assistance of counsel in his first state habeas corpus proceeding so that he could raise his claims of ineffective assistance of counsel." *Id.* Martinez further argued that "because his trial counsel also represented him on direct appeal, the state habeas corpus proceeding was his first opportunity to present his ineffective assistance of counsel claims." *Id.* We, nevertheless, declined to recognize a right to state habeas counsel in such a circumstance observing that "[t]his court is foreclosed by precedent from considering whether an exception exists under the

*Coleman* rule." *Id.* Despite Martinez's request that we "reevaluate" our precedent, we declined to do so noting that "this panel may not undertake such a reevaluation, as it is bound by controlling precedent." *Id.* at 241. We continue to be bound by that precedent, thus there is no need to revisit this issue.

Elizalde additionally contends that his state-appointed attorney's failure to provide effective assistance of counsel is a violation of his right to due process. Relying on our decision in *Welch v. Beto*, 355 F.2d 1016 (5th Cir. 1966), which held that "[h]aving invoked the Texas statutes granting post-conviction hearings, [the petitioner] had the right to be tried according to the substantive and procedural due process requirements of the Fourteenth Amendments," *id.* at 1020, Elizalde contends that Texas' decision to provide state habeas counsel requires it to provide effective assistance of that habeas counsel. Even if our decision in *Welch* suggests that Texas' decision to provide state habeas counsel requires it, as a function of due process, to provide effective assistance of counsel, we have already recognized that the Supreme Court has decided otherwise. *See Goff*, 250 F.3d at 276 ("While the *Welch* holding does hint at some form of due process right once a state decides to provide a non-constitutionally obligated service, the Supreme Court has spoken quite explicitly on this subject since *Welch* and has repeatedly emphasized that ineffective assistance of counsel in a post-conviction proceeding cannot serve as cause to excuse default in a federal habeas proceeding."); *see also Morris v. Dretke*, 2004 WL 49095, at *6 (5th Cir. Jan. 6, 2004) (unpublished) (noting that this Court has continuously "rejected the argument" that Art. 11.071 "creates a federal right enforceable on habeas review"). We are forestalled by Supreme Court precedent, and the precedent of this Court, from recognizing any constitutional right to effective assistance of counsel in state habeas proceedings.

10

As a separate challenge to the district court's application of the procedural bar, Elizalde argues that because the state procedural bar preventing him from exhausting his claims violates due process, there is no independent state law ground justifying the district court's refusal to consider these claims. Elizalde claims that because his right to due process was violated in the state court, there is no independent state law ground supporting the federal procedural default. *See Lee v. Kemna*, 534 U.S. 362, 376 (2002) (finding that there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question"). Presumably, though it is not clear from his brief, Elizalde is referring to the due process violation of not being provided effective assistance of state habeas counsel. As explained above, denial of effective assistance of state habeas counsel is not a violation of due process. Further, the district court found that federal consideration of Elizalde's claims is precluded by the application of Texas' abuse of writ doctrine. We have already found that application of that doctrine is necessarily consistent with the requirements of due process. *See Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir. 1987) ("[S]tate court ruling denying Petitioner the opportunity to file further writs of habeas corpus was not a denial of petitioner's due process rights because a state has no constitutional duty to provide post conviction remedies."); *see also Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) ("[I]nfirmities in state habeas court proceedings do not constitute grounds for relief in federal court.").

Elizalde cannot establish cause and prejudice excusing his failure to exhaust his claims in state court. Therefore, the district court correctly concluded that his claims were procedurally barred, and reasonable jurists would not find this conclusion debatable.

B

11

Elizalde contends that the district court incorrectly concluded that the trial judge was not required by the Constitution to instruct the jury that Elizalde would have been eligible for parole in forty years if sentenced to life in prison. Elizalde argues that under *Simmons v. South Carolina*, 512 U.S. 154, 114 S. Ct. 2187 (1994), the jury must be fully instructed on the alternatives to the death penalty. By not fully informing the jury that a sentence of life imprisonment provides for parole only after forty years, Elizalde argues, the trial court prevented the jury from understanding "the precise meaning of 'life imprisonment.'" *See Simmons v. South Carolina*, 512 U.S. at 169.

In *Simmons*, the Supreme Court considered whether a state trial court unconstitutionally prevented the petitioner from informing the jury that if sentenced to life imprisonment, rather than death, he would not be eligible for parole. *Id.* at 156-61. The petitioner contended that because juries often misunderstand the prison term required by a life sentence, and because ineligibility for parole has a direct bearing on the important issue of his future dangerousness, a defendant must be allowed to instruct the jury that if sentenced to life in prison he will ineligible for parole. *Id.* at 160-61. In a fractured ruling, the Supreme Court agreed. Justice Blackmun's plurality opinion[4] held that in a death penalty case, a "trial court's refusal to provide the jury with accurate information regarding petitioner's parole ineligibility" constitutes a denial of due process. *Id.* at 162. It concluded that if the State rests its case for imposing the death penalty at least in part on the defendant's future dangerousness, "the fact that the alternate to the death sentence is life without parole will necessarily undercut the State's argument regarding the threat the defendant poses to society." *Id.* at 168-69.

We have repeatedly held that *Simmons* does not require a Texas trial court to instruct a jury as to the meaning of life in prison, because the defendant would not, if sentenced to life imprisonment,

_____

[4] Joined by Justices Stevens, Souter and Ginsburg.

12

be ineligible for parole. *See Green*, 160 F.3d at 1045 ("[T]he Fifth Circuit has repeatedly refused to extend the rule in *Simmons* beyond those situations in which a capital murder defendant is statutorily ineligible for parole."); *see also Woods v. Cockrell*, 307 F.3d 353, 361-62 (5th Cir. 2002); *Wheat v. Johnson*, 238 F.3d 357, 361-62 (5th Cir. 2001); *Miller v. Johnson*, 200 F.3d 274, 290 (5th Cir. 2000); *Montoya v. Scott*, 65 F.3d 405, 416 (5th Cir. 1995); *Kinnamon v.* Scott, 40 F.3d 731, 733 (5th Cir. 1994); *see also Smith v. State*, 898 S.W.2d 838, 850-53 (Tex. Crim. App. 1995) (rejecting a due process and Eight Amendment challenge to a trial court's refusal to instruct the jury as to time of eligibility for parole if sentenced to life imprisonment).

Elizalde urges that we should reconsider ten years worth of jurisprudence because the Supreme Court has not clarified its position as to the constitutionality of a refusal to instruct the jury as to when the defendant would be parole eligible if sentenced to life in prison. In a dissent from the Court's refusal to grant certiorari in a Texas case considering this question, Justice Stevens emphasized that the "Court's action in denying certiorari does not constitute . . a decision on the merits of the question presented . . . ." *Brown v. Texas*, 522 U.S. 940, 940, 118 S. Ct. 355 (1997). Rather, he concluded, "the likelihood that the issue will be resolved may increase if this Court allows other tribunals 'to serve as laboratories in which the issue received study before it is addressed by this Court.'" *Id.* Therefore, Elizalde argues, we should continue to study this question.

The Supreme Court, however, has clarified its position on this issue. In *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113 (2000), a majority of the Court explained that "*Simmons* applies only . . . [in] instances where, as a legal matter, there is no possibility of parole if the jury decides the appropriate sentence is life in prison." *Ramdass*, 530 U.S. at 169. Therefore, the district court correctly concluded that the trial court was not constitutionally required to instruct the jury that

13

if sentenced to life in prison Elizalde would not have been eligible for parole for forty years and reasonable jurists would not disagree as to its conclusion.

III

Elizalde's request for a COA is DENIED.