**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**July 7, 2004**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-41131

_____

RICHARD CARTWRIGHT,

Petitioner - Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. C-01-CV-474

_____

Before JOLLY, JONES, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[1]

Richard Cartwright was convicted of capital murder in Texas and sentenced to death. He requests a certificate of appealability ("COA") to appeal the district court's denial of federal habeas relief on his claims that his trial counsel rendered ineffective assistance, and that he was denied a fair and impartial jury and due process. Because Cartwright has failed to make a substantial showing of the denial of a constitutional right, we DENY a COA for each of his claims.

I

---

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Cartwright and two other men were indicted for the capital murder of a man they lured to the waterfront area of Corpus Christi, Texas, by posing as homosexuals. After robbing the victim, one of the other men stabbed him and cut his throat, and then Cartwright shot him in the back. The medical examiner testified that the knife wounds were not fatal, and that the gunshot wound was the cause of death. The prosecution relied heavily on the testimony of Cartwright's accomplices, corroborated by other circumstantial evidence of his guilt.

The Texas Court of Criminal Appeals affirmed Cartwright's conviction and sentence on direct appeal. Cartwright v. State, No. 72,786 (Tex. Crim. App. May 5, 1999) (unpublished). The Supreme Court denied certiorari. Cartwright v. Texas, 528 U.S. 972 (1999). Cartwright filed an application for state habeas relief on July 16, 1998. The Texas Court of Criminal Appeals adopted the trial court's findings and conclusions and denied relief on October 3, 2001. Ex parte Cartwright, No. 49,598-01 (Tex. Crim. App. 2001).

Cartwright filed a federal habeas petition on September 26, 2002. The district court denied relief without a hearing and denied Cartwright's request for a COA on July 14, 2003. Cartwright filed a timely notice of appeal and requested a COA from this court.

To obtain a COA, Cartwright must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003); Slack v. McDaniel, 529 U.S. 473, 483 (2000). To make such a showing, he must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El, 123 S.Ct. at 1039 (quoting Slack, 529 U.S. at 484). Because the district court denied relief on the merits, rather than on procedural grounds, Cartwright "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484. In determining whether to grant a COA, our examination is limited "to a threshold inquiry into the underlying merit of [Cartwright's] claims." Miller-El, 123 S.Ct. at 1034. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Id. at 1039. Instead, the determination is based on "an overview of the claims in the habeas petition and a general assessment of their merits." Id. "Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination." Miniel v. Cockrell, 339 F.3d 331, 336 (5th Cir. 2003).

III

Cartwright requests a COA for his claims that his trial counsel rendered ineffective assistance, that he was denied a fair and impartial jury, and that he was deprived of due process. We discuss each claim in turn.

A

Ineffective Assistance of Counsel

Cartwright requests a COA for his claims that his trial counsel rendered ineffective assistance by (1) failing to use all peremptory strikes during jury selection, (2) failing to object to the selection of jurors in Cartwright's absence, (3) failing to object to the prosecutor's improper attack on the honesty of defense counsel, and striking at Cartwright over the shoulders of defense counsel,[2] and (4) failing to object to the prosecutor's improper argument at the sentencing phase of trial.

To prove ineffective assistance of counsel, a habeas petitioner must show that his lawyer's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove deficient performance, the petitioner must show that counsel's actions "fell below an objective standard of reasonableness." Id.

---

[2]In Texas, "[w]hen a prosecutor makes uninvited and unsubstantiated accusations of improper conduct directed toward a defendant's attorney, in an attempt to prejudice the jury against the defendant, courts refer to this as striking a defendant over the shoulders of his counsel." Phillips v. State, 130 S.W.3d 343, 355 (Tex. App. -- Houston 2004).

at 688.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Id. at 690.  To demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.

1

Peremptory Strikes

Cartwright's trial counsel used only six of the fifteen peremptory strikes allowed under state law.  Cartwright argues that this constitutes ineffective assistance, because it resulted in the waiver of his claim that the trial court improperly denied his challenge for cause to prospective juror Quiroz, who was removed with a peremptory strike.  He also contends that counsel rendered ineffective assistance by failing to use a peremptory strike to remove juror Brown, because of his "pro-death" beliefs.  Finally, he argues that counsel's use of so few peremptory strikes resulted in the denial of an impartial jury.

Cartwright's lead trial counsel submitted an affidavit in the state habeas proceeding and testified at the state habeas evidentiary hearing.  He stated that he used peremptory strikes only when he felt that a juror was unacceptable, because he had no ability to weigh the acceptability of the remaining veniremembers

5

against the one being examined, and did not want to risk having to accept an unfavorable juror after his strikes were exhausted. He stated that Cartwright had consistently expressed the desire to receive either an acquittal or a death sentence. Therefore, his primary focus in jury selection was choosing jurors who indicated that they would be skeptical of accomplice testimony. He stated that Brown satisfied that criterion, and also was open-minded and receptive to the concept of reasonable doubt.

The state habeas court found that trial counsel used peremptory strikes to remove unacceptable jurors and concluded that counsel did not render ineffective assistance by failing to use all of the peremptory strikes before the jury was selected.

The district court held that the state court's decision was not contrary to, or an unreasonable application of clearly established federal law. The district court observed that the use of a peremptory strike remedied any harm from the trial court's failure to remove Quiroz for cause. It also stated that counsel's decision not to strike Brown was based on legitimate trial strategy, because it was consistent with counsel's stated intention of selecting jurors who would be skeptical of accomplice testimony. Even assuming that defense counsel should have removed Brown with a peremptory strike, the district court noted that Cartwright could not identify eight other jurors who should have been struck peremptorily. Therefore, Cartwright was not deprived of his right

6

to an impartial jury as the result of his counsel's failure to exhaust the peremptory strikes.

Reasonable jurists would not find the district court's assessment of this claim debatable or wrong. We therefore deny a COA.

2

<u>Selection of Jurors in Cartwright's Absence</u>

On the fourth day of individual voir dire, after six jurors had been selected, defense counsel informed the court that Cartwright wanted to waive his right to be present because he was in pain after having had a tooth extracted. When the court asked Cartwright if he objected to the court proceeding in his absence, Cartwright shook his head negatively. When the prosecutor questioned whether there was an affirmative waiver on the record, the court asked Cartwright again whether he had any objection to the court proceeding in his absence, and Cartwright replied, "No, I don't, Your Honor." Four prospective jurors were questioned in his absence, two of whom were selected to serve on the jury (one of them as foreperson).

Cartwright argues that counsel rendered ineffective assistance by failing to object to the selection of jurors in his absence. He claims that this prejudiced him because the prosecutor commented unfavorably on his absence during voir dire. He also argues that his appellate counsel rendered ineffective assistance by failing to

7

argue on appeal that this violated his non-waivable right, under state law, to be present during jury selection.

Cartwright submitted an affidavit in the state habeas proceeding in which he stated that he went along with his attorney's request because he did not know what else to do, but that he thought that only one prospective juror would be questioned in his absence, and that he did not agree for the others to be questioned and selected while he was not present. Cartwright's counsel stated in his affidavit that Cartwright asked to be excused and did not wish to delay the voir dire. Counsel stated that the next day, when he discussed with Cartwright the two jurors selected while he was absent, Cartwright did not seem to have any problem with those jurors or with the number of jurors selected. At the state habeas evidentiary hearing, counsel testified that he would have asked for a continuance if Cartwright had requested it.

The state habeas court found that defense counsel did not pressure Cartwright to refrain from requesting a recess; that three[3] jurors were selected in Cartwright's absence; and that Cartwright did not request that Strong and Bowers (the two jurors selected in his absence) be re-examined. The state habeas court concluded that Cartwright did not knowingly waive his right to be

---

[3]Finzel, identified by the state habeas court as the third juror selected in Cartwright's absence, was actually selected the day before Cartwright asked to be excused. Our review of the record confirms that only two jurors -- Bowers and Strong -- were selected while Cartwright was not present.

8

present during the voir dire; that he had not shown that his opportunity to defend was impaired or diminished by his absence; and that defense counsel did not render ineffective assistance by consenting to his absence.

The district court noted that Cartwright did not allege that he would not have selected those same jurors had he been present; that he did not point to anything that would make those two jurors objectionable; and that he testified in the state evidentiary hearing that he did not have a problem with anything that they said, but only objected to the fact that they were selected while he was absent from the courtroom. The district court held that Cartwright's failure to allege any actual harm from the selection of jurors in his absence was fatal to his ineffective assistance claim. The district court also held that Cartwright failed to demonstrate prejudice from appellate counsel's failure to raise the claim on appeal.

Reasonable jurists would not find debatable or wrong the district court's conclusion that Cartwright failed to allege, much less demonstrate, prejudice. We therefore deny a COA for this claim.

3

## Prosecutorial Misconduct

By way of background, there was evidence that Cartwright's accomplices, Hagood and Overstreet, had known each other for several years prior to the murder, but they first met Cartwright

9

less than a week before the murder.  There was also evidence that the gun belonged to either Hagood or Overstreet, but the State's theory was that Overstreet stabbed the victim and Cartwright shot him, while Hagood searched the victim's car.  Cartwright called Dr. Rupp as a witness during the guilt-innocence phase of the trial. Rupp, who previously had served as a medical examiner, testified that he had reviewed the autopsy reports and photographs of the crime scene; that he had not reviewed all of the police reports and witness statements; that in his opinion, one person stabbed the victim and another person shot him; that of the three persons involved and the two weapons involved, the two people who knew each other were probably the assailants; and that usually the owner of a gun does the shooting.

During closing argument at the guilt-innocence phase, the prosecutor argued, without objection by defense counsel:

> ... Dr. Rupp would change his mind any time you asked him a different way, the question. I mean, isn't it kind of funny how the defense lawyer says, Dr. Rupp, I wanna bring you up here as an expert, and here I'm giving you the autopsy report and the pictures, and the defense neglects to give him any other information?  Not one scrap of evidence.  Not one statement from a police officer or report from a police officer or identification officer, not one statement from a witness, not even what happened in court.  Remember I said, "Dr. Rupp, if you heard that somebody said that they heard this defendant admit to the crime, would that change your mind," he goes, "Sure it would change my mind.  Sure it would change my mind."  The defense lawyer is trying to blindside you by putting on this so-called expert on human behavior with not enough

10

> information -- not enough information. And every time I talked to Dr. Rupp, he kept saying, I wasn't asked that. I wasn't asked that. I was only asked this. Well, don't you think that's kind of important, Dr. Rupp, to know the whole story? You folks got the whole story. How come he didn't? How come the defense lawyer didn't give him -- have the courtesy to give him all the information? A little sneaky, isn't it? Little sneaky.

Cartwright argues that his trial counsel rendered ineffective assistance by failing to object to the above-quoted argument attacking the veracity of defense counsel.

In his affidavit presented to the state habeas court, defense counsel stated that, although he felt that the prosecutor's comments about him being "a little sneaky" were improper, he did not feel that they were sufficiently damaging to object. He also did not want to object and thereby call the remarks to the attention of the jury.

The state habeas court found that the prosecutor's reference to defense counsel as being "sneaky" was improper, but that the comment did not harm Cartwright's defense, and that counsel's decision not to object was reasonable trial strategy.

The district court held that the state court's findings were presumptively correct and that Cartwright had not rebutted them with clear and convincing evidence. The district court agreed that the prosecutor's comment about defense counsel being "sneaky" was improper, but concluded that counsel made a legitimate strategic

11

decision not to object, and that the comment did not infect the entire trial with undue unfairness.

Reasonable jurists would not conclude that the district court's assessment of this claim was debatable or wrong. Accordingly, we deny a COA.

4

<u>Prosecutorial Argument</u>

During the punishment phase of trial, the prosecutor argued, without objection by defense counsel:

> Imagine what [the victim] was thinking. First, he's -- the weapons are pulled on him and then he is searched for his valuable possessions, then Kelly Overstreet, behind him, slits his neck. We don't know exactly what happened. We can maybe guess he tried to get away and Kelly stabs him in the back. The medical evidence was that those probably weren't, you know, all that great of a blow. It wasn't a fatal blow. So you can imagine, he's probably in a lot of pain, he's suffering, but he is not down for the count right then. You can imagine his mind's probably still working and imagine the fear that he felt. Then when he's doing his best just to survive the situation, then he's shot in the back. That's the consideration [Cartwright] and his two buddies gave to [the victim]. I want you to consider these special issues, remember the type of consideration he gave [the victim].

Cartwright argues that counsel rendered ineffective assistance by failing to object to this argument, which he characterizes as urging the jury to disregard the special issues in favor of giving Cartwright the same type of consideration he gave the victim --

12

telling the jury to take Cartwright's life because he took the life of the victim.

The state habeas court did not agree with Cartwright's interpretation of the prosecutor's argument. Instead, it found that the prosecutor did not urge the jurors to disregard the special issues. It therefore concluded that counsel did not render ineffective assistance by failing to object to the argument.

The district court held that the state habeas court's rejection of this claim was not contrary to or an unreasonable application of federal law, because Cartwright failed to show that the comments encouraged the jury to set aside the special issues and, therefore, counsel did not render deficient performance by failing to object. The district court concluded that the prosecutor did not urge the jurors to disregard the special issues, but instead focused the jury's attention on a traditional factor for determining future dangerousness -- the vicious and heartless attitude of the killers and their lack of concern for the victim.

Reasonable jurists would not find debatable or wrong the district court's interpretation of the prosecutor's argument and its conclusion that Cartwright's counsel did not render ineffective assistance by failing to object to the argument. We therefore deny a COA for this claim.

## Jury Selection

Cartwright requests a COA for his claim that he was denied a fair and impartial jury by the trial court's improper granting of the State's challenge for cause to prospective juror Luis. Cartwright argues that the State failed to establish that Luis was unwilling to set aside his own beliefs temporarily in deference to the rule of law. According to Cartwright, Luis never stated that his personal or religious beliefs regarding the death penalty would interfere with his sitting as a juror. The most he said was "I don't think I could do it," or "I wish I could tell you I could do it, but I don't think I could." In response to the prosecutor's question, "would you have a hard time answering those questions that way, knowing that he's gonna get a death sentence," Luis responded, "Probably will." Cartwright therefore contends that the State failed to establish that Luis's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v. Witt, 469 U.S. 412, 424 (1985).

The State argues that Luis's answers to questions on voir dire demonstrate that his views would have impaired or substantially prevented him from answering the special punishment issues truthfully. Although Luis agreed with the death penalty in the abstract, he could not personally assess death as punishment for a capital office. Questions about his ability to follow the law were

14

answered with "might" and "maybe." At times when he indicated he could follow the law and answer the special issues truthfully, he followed his answers with qualifiers such as "but," "still," "I think," and "probably." When asked by defense counsel whether he would lie and answer the special issues in such a way that would prevent Cartwright from getting the death penalty, his answer was a qualified, "I don't think so." The trial court noted Luis's ambivalence in granting the State's challenge for cause.

The state habeas court concluded that, even if the trial court erred in granting the State's challenge for cause to Luis, Cartwright failed to show that the error deprived him of a lawfully constituted jury.

The district court held that the record supported the trial court's finding that Luis would be unable to answer the special issues truthfully because of his inability to set aside his personal and religious beliefs. The district court observed that, although some of Luis's statements indicated that he could answer the special issues truthfully based on the evidence, he consistently used qualifiers and his testimony, as a whole, was equivocal. The district court pointed to Luis's testimony that his religious beliefs prevented his involvement in a process that would take a human life; that his participation in such a process would cause him mental and physical stress; that he had already been taking medication for ulcers he suffered from the stress of jury selection; and that he was worried that his religious convictions

15

would disrupt the jury deliberations.  The district court concluded that, as a whole, Luis's statements showed that his religious convictions would substantially impair his ability to answer the special issues.  The district court therefore concluded that the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law.

Reasonable jurists would not find the district court's assessment of this claim debatable or wrong.  We therefore deny a COA.

C

Due Process

Cartwright seeks a COA for his claims that the trial court denied him due process by (1) allowing two jurors to be selected in his absence, (2) allowing the prosecutor to improperly attack the honesty of defense counsel and to improperly strike at him over the shoulders of defense counsel, (3) allowing the prosecutor to improperly urge the jurors to disregard the death penalty special issues, and (4) denying his requested jury instruction regarding parole eligibility.

1

Jury Selection, Prosecutorial Misconduct

The first three due process sub-claims have already been discussed, in connection with Cartwright's request for a COA on his

ineffective assistance claims.[4]  We deny a COA for these due process claims for essentially the same reasons.  Reasonable jurists would not find debatable the district court's conclusion that Cartwright failed to demonstrate that he did not get a fair trial as a result of the selection of two jurors while he was absent from the courtroom, or as a result of the prosecutor's closing arguments regarding the honesty of defense counsel and the special issues.

2

Parole Eligibility Instruction

During deliberations in the sentencing phase, the jury sent a note to the trial judge asking, "What does 'life in prison' mean. Is parole possible?"  The trial judge responded that the jury had received all of the instructions applicable to the case and denied Cartwright's request to instruct the jury that he would not be eligible for parole until after he had served forty years in prison.

Cartwright argues that the trial judge's refusal to instruct the jury on parole eligibility prevented the jury from having an accurate understanding of Texas law and violated his right to equal protection.  He contends that, if the trial judge had allowed the instruction, he could have provided evidence that he would not be

---

[4]The State's argument that Cartwright's due process claim of prosecutorial misconduct was not raised in the district court is belied by the district court's opinion addressing and rejecting that claim.

17

a future danger to society if released on parole at age 66. He contends further that his equal protection rights were violated because of the Texas practice of instructing jurors on parole in non-capital cases, but not in capital cases.

On direct appeal, the Texas Court of Criminal Appeals rejected Cartwright's argument that the trial court violated due process by failing to instruct the jury on parole eligibility. The court noted that, at the hearing on Cartwright's motion for new trial, seven of the twelve jurors were questioned regarding parole. Each of them testified that, although there was an initial curiosity as to the length of a life sentence, once the trial court responded to their note, there was no further mention of the topic; each stated that the jury answered the special issues based solely on the evidence before them; and no juror testified that he or she would have answered the special issues differently had they been instructed on parole law. The state habeas court denied relief on this claim because the issues raised by it were addressed on direct appeal and Cartwright made no claim of new facts relating to the claim.

The district court held that, because this claim is foreclosed by clear precedent, the state court's rejection of it was not contrary to or an unreasonable application of federal law. See Ramdass v. Angelone, 530 U.S. 156, 169 (2000) (parole eligibility instruction required "only ... [in] instances where, as a legal matter, there is no possibility of parole if the jury decides the

18

appropriate sentence is life in prison"); <u>see</u> <u>also</u> <u>Elizalde v. Dretke</u>, 362 F.3d 323, 332-33 (5th Cir. 2004) (collecting cases holding that Constitution does not require Texas trial courts to instruct juries as to the meaning of life in prison because the defendant would not, if sentenced to life imprisonment, be ineligible for parole).

In the light of this clear precedent, reasonable jurists would not find the district court's assessment of this claim debatable or wrong. Accordingly, Cartwright is not entitled to a COA.

III

With respect to each of his claims, Cartwright has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). We therefore DENY his request for a COA to appeal the district court's denial of federal habeas relief.

COA DENIED.