United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 10, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-70047

ROLANDO RUIZ,

Petitioner-Appellant,

versus

NATHANIEL QUARTERMAN,

Respondent-Appellee.

Appeal from the United States District Court
For the Western District of Texas

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Rolando Ruiz was sentenced to death after a jury in Bexar County, Texas, convicted him of capital murder. Texas state courts affirmed his conviction and sentence and refused habeas relief. The federal district court dismissed his federal habeas petition, finding his claims of ineffective assistance of counsel and unconstitutional strictures of argument in mitigation procedurally barred and rejecting his contention that the state trial court erred in sustaining the State's challenge for cause of a member of the venire. The court refused certificate of appealability except as to the last claim. We refuse Ruiz's request for certificate of

appealability on the first two claims and affirm the district court's judgment on the third.

I

-1-

On January 18, 1995, a jury in Bexar County, Texas, convicted Ruiz of capital murder and in the punishment phase gave affirmative answers to the two interrogatories required by Texas law. He was then sentenced to death. The Texas Court of Criminal Appeals affirmed the conviction and death sentence.[1] Ruiz filed a state habeas application on September 15, 1997, for which the state trial court issued its findings of fact and conclusions of law on December 30, 2002, recommending that the Texas Court of Criminal Appeals deny relief. It did.[2]

Ruiz then filed his federal petition, claiming ineffective assistance of counsel, unconstitutional strictures of argument in mitigation, and error in the state trial court's sustaining the State's challenge for cause of a member of the venire, assertedly "*Witherspoon* error."[3] The district court denied relief, finding the first two claims procedurally barred because Ruiz failed to exhaust

---

[1] *State v. Ruiz*, unpub. op., No. 72,072 (TEX. CRIM. APP. Feb. 25, 1998).

[2] *Ex Parte Rolando Ruiz*, unpub. op., No. 27,328 (TEX. CRIM. APP. April 2, 2003).

[3] *See Witherspoon v. Illinois*, 391 U.S. 510 (1986); *Wainwright v. Witt*, 469 U.S. 412 (1982). Ruiz made other claims that he does not pursue here.

2

them in state court, thus raising an independent state procedural bar to relief, and rejecting the third claim. The court refused certificate of appealability on its procedural rulings but granted COA on the *Witherspoon* claim.[4]

-2-

There was sufficient evidence at trial from which the jury could conclude that Ruiz was hired by Mark and Michael Rodriguez to murder Michael's wife, Theresa, for two thousand dollars; that he did so by shooting her in the head at close range with a .357 revolver.

## II

We turn first to the request for COA. COA will issue only if Ruiz makes a substantial showing of the denial of a constitutional right, a showing that "reasonable jurists could debate whether (or, for that matter, agree that)" the court below should have resolved the claims in a different manner or that this Court should encourage Ruiz to further litigate his claims in federal court.[5]

---

[4] Mr. Ruiz moved to alter or amend the judgment under Federal Rule 59(e). That motion was denied on September 13, 2005. He also moved to stay the proceedings and hold the case in abeyance. His request was denied on September 15, 2005. He requested COA from the U.S. District Court on the issues previously denied, and this request was denied on October 13, 2005. Finally, Mr. Ruiz's motion to reconsider, alter or amend the judgment and order denying the COA application was denied on November 30, 2005.

[5] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000)); *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000).

As the lower court denied the first two claims on procedural grounds without reaching the merits of the underlying constitutional claims, COA should issue only if Ruiz demonstrates that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[6] The determination of either issue requires "an overview of the claims in the habeas petition and a general assessment of their merits," but not "full consideration of the factual or legal bases adduced in support of the claims."[7] We find it plain that the soundness of the district court's denials of the claims as procedurally barred is not debatable among reasonable jurists and we refuse Ruiz's request for COA.

The exhaustion doctrine of 28 U.S.C. § 2254(b)(1) codifies long-developed principles of comity.[8] Before a federal court can find merit in alleged errors by state courts, a petitioner must have first provided the state's highest court with a fair opportunity to apply (1) the controlling federal constitutional principles to (2)

---

[6] *Slack*, 529 U.S. at 484 (emphasis added); *Kutzner v. Johnson*, 242 F.3d 605, 608 (5th Cir. 2001).

[7] *Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004) (quoting *Miller-El*, 537 U.S. at 336 ).

[8] *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8-10 (1992); *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971); *Dowthitt*, 230 F.3d at 745-46.

the same factual allegations.[9]  This requirement is designed to give state courts the initial opportunity to pass upon and, if necessary, correct errors of federal law in a state prisoner's conviction or sentence.[10]   The purpose of exhaustion "is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court."[11]

A fair opportunity requires that all the grounds of the claim be first and "fairly presented" to the state courts.[12]  In other words, in order for a claim to be exhausted, the state court system must have been presented with the same facts and legal theory upon which the petitioner bases his current assertions.[13] "[I]t is not enough ... that a somewhat similar state-law claim was made."[14]  An argument based on a legal theory distinct from that relied upon in

---

[9] *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Rose v. Lundy*, 455 U.S. 509, 522 (1982); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Thomas v. Collins*, 919 F.2d 333, 334 (5th Cir. 1990).

[10] *Picard*, 404 U.S. at 275-76.

[11] *Keeney*, 504 U.S. at 10.

[12] *Picard*, 404 U.S. at 275.

[13] *Id.* at 275-77.

[14] *Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir. 2001) (citing *Anderson*, 459 U.S. at 6).

the state court does not meet the exhaustion requirement.[15] "Exhaustion 'requires a state prisoner to present the state courts with the same claim he urges upon the federal courts.'"[16] AEDPA excuses these requirements only if the petitioner shows "(i) there is an absence of available state remedies in the courts of the State, or (ii) circumstances exist that render such processes ineffective to protect the rights of the applicant."[17]

Furthermore, where a petitioner has failed to exhaust claims in state court, and that failure would now result in the state procedurally rejecting those claims, the petitioner has procedurally defaulted the claims and we must find them procedurally barred.[18] Exceptions to procedural default exist where the petitioner shows "cause and actual prejudice" or that application of the procedural bar will result in a "fundamental miscarriage of justice."[19]

Ruiz's relevant claims of ineffective assistance of counsel at trial and unconstitutional strictures of argument in mitigation first came in his petition for habeas relief filed in federal district court. The state responded that the court could not hear those claims because Ruiz did not present them to the state courts,

---

[15] *Id.* at 259 (citing *Vela v. Estelle*, 708 F.2d 954, 958 n.5 (5th Cir. 1983)).

[16] *Id*. at 261 (citing *Picard*, 404, U.S. at 276).

[17] 28 U.S.C. § 2254(b)(1)(b).

[18] *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

[19] *Id.* at 750.

although he could have done so, at the least in a petition for state habeas relief; moreover, Texas courts would now dismiss the claims as an abuse of the writ without reaching their merits. The court agreed, finding that Ruiz had not established excuse under AEDPA for failure to exhaust or an applicable exception to procedural default. It then refused to grant COA, a request now made to this court.

Ruiz does not contend that he did not know that state habeas offered an avenue for presenting his claims or that the claims were presented. Rather, his present counsel argues, as he did to the district court, that for two reasons there should be no procedural bar here. First, Ruiz contends that his state habeas counsel was ineffective. Ruiz's state habeas counsel filed a petition on behalf of Ruiz asserting seventeen claims, eight of which claimed ineffective assistance of trial counsel. Ruiz's present claim is that his lawyer failed to allege two claims. First, a claim of ineffective assistance of trial counsel with two specifications: that trial counsel failed to perform a social history and background investigation in preparing for the sentencing phase of the trial and failed to offer the report or the testimony of Dr. Harry Munsinger at the sentencing stage. Second, a claim that Ruiz was denied due process by the state trial court's instruction to the jury to disregard a portion of defense counsel's closing argument regarding the co-defendant who hired Ruiz to murder, as charged in the indictment. The federal district court agreed that trial counsel was ineffective and suggested that state habeas counsel was

ineffective, but it properly rejected Ruiz's argument for the reason that incompetence of habeas counsel is not an excuse under 28 U.S.C. § 2254 (b)(1)(B) of AEDPA for failure to exhaust or "cause" for an exception to procedural default because Ruiz had no constitutional right to counsel in habeas proceedings.[20] This is true even where a claim cannot be brought, or brought effectively, until state habeas proceedings.[21]

Second, Ruiz re-characterizes his claim of ineffective habeas counsel by asserting that the State obstructed his efforts to prosecute the claims by appointing incompetent counsel, effectively making his state remedy illusory and, hence, insulating his claims from federal review through the doctrine of procedural default. In Ruiz's view, he would be better off if there had been no state habeas proceeding available or if he had had no appointed counsel. According to Ruiz, this situation resulted from a "structural deficiency" in the state habeas system, rendering that system "absent" or "ineffective to protect [his] rights" under AEDPA and providing cause for his procedural default. Yet the law of this Court is clear: ineffective state habeas counsel does not excuse

---

[20] *See, e.g., Coleman*, 501 U.S. at 722; *Martinez v. Johnson*, 255 F.3d 229, 239-40 (5th Cir. 2001); *Beazley v. Johnson*, 242 F.3d 248, 270-72 (5th Cir. 2001); *Elizalde v. Dretke*, 362 F.3d 323, 330 (5th Cir. 2004). The district court analyzed the issue only when discussing "cause."

[21] *See Martinez*, 255 F.3d at 239-40; *Beazley*, 242 F.3d at 256; *Elizalde*, 362 F.3d at 330.

8

failure to raise claims in state habeas proceedings.[22]  Where the state has provided a habeas remedy, the petitioner must pursue it before filing in federal court, even if the state provides ineffective habeas counsel.

In a further effort to show "cause" for his failure to raise these claims in state court, Ruiz seeks to show that an "objective external factor"[23] impeded his ability to follow state procedural rules.  He contends that the state affirmatively interfered with his efforts to acquire new counsel for direct appeal, a replacement for Donald Mach, his trial counsel, which Ruiz thought necessary to prosecute his claims of ineffective assistance of trial counsel.  But, as the trial court explained, it refused to dismiss Mach because any claims of ineffective assistance of trial counsel could be raised in a state habeas petition for which, moreover, Ruiz had already filed a request for appointment of counsel.  Hence whatever force exists behind Ruiz's argument that ineffectiveness of state habeas counsel creates "cause" (or prompts a 28 U.S.C. § 2254 (b)(1)(B) exception to AEDPA), this contention adds nothing.[24]

---

[22] *See supra* notes 20 and 21.

[23] *Coleman*, 501 U.S. at 722; *Murray v. Carrier*, 477 U.S. 478 (1986).

[24] Ruiz suggests that his appellate counsel's "conflict of interest" highlights how the state stacked the cards against him: ineffective trial counsel, state habeas counsel, *and* appellate counsel.  But ineffectiveness of trial counsel is generally an issue for habeas precisely because trial counsel usually pursues the direct appeal.  *Ex parte Torres*, 943 S.W. 2d 469, 475 (Tex. Crim. App. 1997).  And whatever the reason Mach did not pursue the

Finally, Ruiz urges that the procedural bar here works a "miscarriage of justice".[25] This requires a showing by clear and convincing evidence that, "but for the constitutional error at [Ruiz's] sentencing hearing, no reasonable juror would have found him eligible for the death penalty" under state law.[26] Ruiz points evidence neglected by his ineffective trial counsel, specifically his allegedly damaging social history and background and drug use. The State points to evidence before the jury of Ruiz's violent conduct – the brutal facts of the murder, Ruiz's carrying guns, aggravated robbery, assaults of his girlfriend, and membership in the "Texas syndicate gang," and that while in jail awaiting trial, Ruiz committed at least three violent gang-related injury-producing assaults of detention officers and other inmates.

The absence here of the required "clear and convincing evidence" that "no reasonable juror" would have found Ruiz eligible for the death penalty is not debatable among jurists. We are persuaded that reasonable jurists would not debate the trial court's

---

unconstitutional strictures of argument claim, it is unrelated to his "conflict of interest" about which Ruiz complains.

[25] *Sawyer v. Whitley*, 505 U.S.333, 335-35 (1992).

[26] *Id.* at 347. Under Texas law, the jury must find the defendant likely to be a continuing threat to society and find an absence of "sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed." TEX. CODE CRIM. P. art. 37.071, § 2(e)(1). Ruiz contends that the neglected evidence vitiates both prongs.

10

determination that Ruiz failed to establish this exception to procedural default, and we refuse to issue COA.

III

The sole claim of error remaining in this appeal and the only claim for which COA has issued is that the trial court erred in granting the state's challenge for cause of Ms. Castro, a member of the venire. This allegedly violated *Witherspoon v. Illinois*,[27] where the Supreme Court held that jurors may not be excused from sitting on capital juries simply because they voiced general objection to the death penalty or expressed conscientious or religious scruples against its infliction.

This prospective juror gave conflicting signals of her ability to serve on the jury given her opposition to capital punishment. She stated in her juror questionnaire that she was opposed to capital punishment. While in open court she stated that she did not believe in capital punishment but, if instructed to do so, could follow the court's instructions. She also testified that "I think my answer to this point is that I get out of here and I'm going to start some kind of action against the death penalty to change the law." The latter statement was apparently the tipping point for the trial judge, who observed, "I went along until she said she was going to get involved in an organization doing away with the death penalty."

---

[27] 391 U.S. 510 (1986).

11

The Texas Court of Criminal Appeals summarized Castro's various statements as follows:

> First, she told the State in effect that she would never be a part of a jury that would impose the death penalty and would vote to ensure that a life sentence with no parole before 35 years would be given. Then she told [Ruiz] she could be fair and listen to the evidence and let the trial court set the sentence. Then she told the State that she would influence her verdict so that she would not ever really consider giving the death penalty and would vote for a life sentence. When the trial court tried to straighten things out, Castro told him she wanted to start a group to work to abolish the death penalty.

Lay persons come to the courthouse with varying levels of education and thought about capital punishment. The opening of a capital trial is an alien environment to citizens called from jobs and homes. Lay persons are confronted by skilled lawyers engaged in an adversarial contest who probe their views on a profound and divisive social issue, usually with a goal of retention or exclusion shaping the questions. We know from experience that the result is often a series of responses that seem to shift and turn and even conflict as questions are framed, reframed and just repeated. A stranger to the trial reading the bare transcript is left with incomplete sentences and elliptic answers with no reconciling theme. Yet one present at trial may well have had a quite different picture. Inflection of voice and body movements of each cast member, absent from the transcript, are present at trial. Until at least twenty-one years ago, such transcripts confounded appellate courts. *Wainwright v. Witt* responded to the not infrequent

frustration of appellate review of the calls of trial judges made in the process of selecting jurors for the trial of capital cases — with a pragmatic solution.[28] The court acknowledged that a prospective juror's bias "involves credibility findings whose basis cannot be easily discerned from an appellate record."[29] The Court observed: "[T]he manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words. That is seen [by the trial court] below, but cannot always be spread upon the record."[30] "Despite this lack of clarity in the printed record, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law."[31] Ms. Castro is the classic wavering prospective juror. This was a call to be made by the trial judge, and there is no record basis for concluding that the court abused its discretion. It follows that we cannot say that the decision of the state court in this case was an unreasonable application of the law as decided by the Supreme Court, and we affirm the denial of federal habeas relief by the district court.

In sum, we refuse to grant the requested COA and affirm the judgment of the district court denying federal relief.

---

[28] 469 U.S. 412 (1985).

[29] *Id.* at 429

[30] *Id.* at 429 n.9

[31] *Id.* at 425-26

13